**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**RALEIGH DIVISION**

| | |
|---|---|
| In re: | **Chapter 11** |
| **SAINT AUGUSTINE'S UNIVERSITY** | **Case No.: 26-01864-5-DMW** |
|     Debtor | |

**EMERGENCY MOTION OF SAINT AUGUSTINE'S UNIVERSITY FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING DEBTOR-IN-POSSESSION FINANCING AND APPROVAL OF SECURITY INTERESTS, LIENS, AND ENCUMBRANCES TO SELF-HELP VENTURE FUNDS**

NOW COMES Saint Augustine's University (the "Debtor" or the "University"), by and through its undersigned counsel, pursuant to 11 U.S.C. §§ 105(a), 363(b) and 364, and hereby moves the Court for approval of, and authorization to obtain, debtor-in-possession financing and credit from Self-Help Ventures Fund ("Self-Help") upon the terms and conditions set forth herein. In support hereof, the Debtor shows the Court as follows:

**INTRODUCTORY STATEMENT, SUMMARY OF RELIEF REQUESTED, AND EXIGENT CIRCUMSTANCES**

1.    By and through this *Emergency Motion of Saint Augustine's University for Entry of Interim and Final Orders Authorizing Debtor-in-Possession Financing and Approval of Security Interests, Liens, and Encumbrances to Self-Help Ventures Fund* (the "DIP Financing Motion") pursuant to §§ 105, 363(b), and 364 of the Bankruptcy Code, the Debtor requests entry of an Order—on an interim and final basis (the "Interim Order" or the "Final Order" and, collectively referred to as, the "DIP Financing Orders"), authorizing the Debtor to enter into a post-petition financing and credit transaction with Self-Help, in the maximum principal amount of $2,000,000.00, which would be secured by security interests, liens, and encumbrances in the following: (a) all real property of the Debtor, including the campus at 1315 Oakwood Avenue, Raleigh, North Carolina 27610; (b) all personal property; (c) all accounts, inventory, equipment,

1

instruments, chattel paper, deposit accounts, general intangibles, investment property, and intellectual property; (d) all rents, leases, and contracts; (e) all proceeds and products of the foregoing; and (f) all of the collateral described in the Prepetition Collateral Documents[1]. The aforementioned collateral shall be collectively referred to herein as the "DIP Loan Collateral" and the entire credit transaction with Self-Help, including any and all attendant loan documents necessary to consummate the transaction with Self-Help shall be collectively referred to as the "DIP Loan Transaction" or the "DIP Loan". The DIP Loan would further be secured by a superpriority administrative claim with priority over any or all administrative expenses of the kind specified in §§ 503(b) or 507(b) of the Bankruptcy Code.

2.      The relief requested herein is sought, on an emergency basis, because the Debtor does not have sufficient funding or income to continue its operations without the DIP Loan; and without the DIP Loan the Debtor will not have an opportunity to reorganize through this bankruptcy case.

3.      In order to maintain existing operations and retain the maximum value of its real and personal property, the Debtor will be required to incur certain operating expenses. Absent receiving approval of the DIP Loan, the Debtor will not be able to continue its operations uninterrupted or maintain its real and personal property, reducing the amount of any future payment of to creditors.

4.      In accordance with Rule 4001 of the Fed. R. Bankr. P., set forth below is a summary of the terms of the proposed DIP Transaction:[2]

---

[1] Capitalized terms not otherwise defined herein shall have the same meaning as provided in the Term Sheet attached hereto as **Exhibit B**.

[2] The description of the terms and conditions of the DIP Loan and the Interim Order, set forth in this DIP Financing Motion, are intended solely for informational purposes to provide the Court and parties-in-interest with an overview of the significant terms thereof and should only be relied upon as such. The summaries are qualified in their entirety by the documents evidencing the DIP Loan (referred to herein as the "DIP Loan Documents") and the Interim Order.

| Term | Description |
|---|---|
| Borrower: | Saint Augustine's University |
| Lender: | Self-Help Ventures Fund |
| Total Maximum Commitment Amount: | $2,000,000.00 |
| Term/Repayment: | The earlier of: (a) 12 months after the Petition Date, (b) the Effective Date of a confirmed Chapter 11 plan of reorganization; (c) the consummation of a sale of all or substantially all of the Debtor's assets pursuant to 11 U.S.C. § 363; (d) the date of acceleration of the DIP Facility following an Event of Default; or (e) the date of conversion of the Chapter 11 Case to a case under Chapter 7 or dismissal of the Chapter 11 case. |
| Interest Rate: | Non-default interest at 9% per annum; default interest at 12% per annum. |
| Fees: | None |
| Security Interests, Liens, Encumbrances, and Collateral: | Self-Help shall be granted, pursuant to §§ 364(c)(2) and 364(c)(3) of the Bankruptcy Code, a continuing, valid, binding, enforceable, non-avoidable, and automatically perfected, post-petition security interest in the DIP Collateral. Self-Help shall further be allowed a superpriority administrative claim with priority over any or all administrative expenses of the kind specified in sections 503(b) or 507(b) of the Bankruptcy Code. |
| Use of Proceeds: | The funds, financing, and credit provided by Self-Help under the DIP Loan Transaction shall be used by the Debtor to fund and pay operating expenses incurred by the Debtor as well as necessary costs and expenses associated with the administration of this Bankruptcy Case. In each case, such funds shall be used solely in accordance with the Approved Budget and the Financing Orders |

---

In the event there is a conflict between this Motion, the DIP Loan Documents, and the Interim Order, the terms, conditions and provisions of the DIP Loan Documents and the Interim Order, as applicable, shall control in all respects. A more detailed summary of the terms of the DIP Loan is set forth on the non-binding term sheet attached hereto as EXHIBIT B.

| | (each as defined below) incorporating the terms hereof. |
|---|---|
| Covenants: | The DIP Loan shall have customary covenants for a loan of this type. |
| Representations and Warranties: | The Debtor shall make the representations and warranties that are customary for a loan of this type. |
| Events of Default: | The DIP Loan shall have those events of default that are customary for a loan of this type. |

5.     Federal Rule of Bankruptcy Procedure 4001(c) provides that a final hearing on a motion to obtain post-petition credit and financing may not be commenced earlier than fifteen (15) days after the service thereof. However, and upon request, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize the obtaining of credit and financing if necessary to avoid immediate and irreparable harm to a debtor's estate pending a final hearing. In accordance with Fed. R. Bankr. P. 4001(c), the Debtor requests that the Court (a) conduct an expedited preliminary hearing on the Motion and authorize the Debtor to execute any and all documentation to consummate the DIP Transaction and extension of credit up to the principal amount of $2,000,000.00, on an interim basis, to maintain and finance the ongoing operations of the Debtor, and avoid immediate and irreparable harm and prejudice to the Debtor, its bankruptcy estate, creditors, and all parties-in-interest; and (b) schedule a final hearing on the relief requested herein.

**JURISDICTION AND AUTHORITY**

6.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding in which final orders or judgments may be entered by a bankruptcy court pursuant to 28 U.S.C. § 157(b)(2).

7.   This Court, likewise, has authority to hear this matter pursuant to the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984.

8.   Venue is appropriate in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## FACTUAL BACKGROUND

9.   On April 27, 2026 (the "Petition Date"), the Debtor filed a voluntary petition seeking relief under chapter 11 of the Bankruptcy Code and assigned Case No. 26-01864-5-DMW (the "Bankruptcy Case"). Since the Petition Date, the Debtor has continued to operate its organization and managed its property as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

10.   The Debtor, Saint Augustine's University, is a North Carolina nonprofit corporation located in Southeast Raleigh, North Carolina. One of only two historically Black colleges or universities ("HBCU") affiliated with the Episcopal Church, the Debtor was chartered as a "Normal School and Collegiate Institute" on July 19, 1867 by Episcopal clergy to educate formerly enslaved and other underprivileged people. The Debtor has been providing educational opportunities to students for one-hundred and fifty-nine years.

11.   The Debtor believes and represents that in order to maximize the value of its assets it will be required to incur certain operating expenses.

12.   In December of 2025, the University and Self-Help entered into a secured credit facility whereby Self-Help purchased existing credit facilities between the University and Bank OZK and Gothic Falcon, LLC.

   a. *OZK Facility*. On or about October 11, 2023, Bank OZK lent funds in the original principal amount of Seven Million Dollars ($7,000,000.00). That Loan Agreement was modified and subsequently assigned to Gothic OZK and then

5

to Self-Help. The OZK Facility bears interest at nine percent (9%) with default interest rate at twelve percent (12%). The OZK Facility has a maturity date of January 1, 2036. The OZK Facility is secured by a Mortgage, Security Agreement and Financing Statement, and an Assignment of Rents, Leases and Contracts.

b. *Gothic Falcon Facility.* On or about August 16, 2024, Gothic Falcon, LLC extended credit to the University up to Thirty Million Dollars ($30,000,000). That credit facility was modified eight times with the most recent being effective on December 30, 2025. The Gothic Falcon Facility bears interest at nine percent (9%) with default interest rate at twelve percent (12%). The Gothic Falcon Facility has a maturity date of January 1, 2036. The Gothic Falcon Facility is secured by a Deed of Trust, Assignment of Rents and Leases, collateral Assignment of Property Agreements, Security Agreement and Fixture Filing.

The OZK Facility and Gothic Falcon Facility are collectively referred to herein as the "Prepetition Facilities," the obligations thereunder as the "Prepetition Obligations," and the security instruments thereunder as the "Prepetition Collateral Documents."

13.   Prior to the Petition Date, Self-Help purchased the Prepetition Collateral Documents.

14.   Before the Petition Date, the University explored and attempted to obtain credit and financing from multiple third-party sources on both a secured and unsecured basis. Despite its best efforts, the University was not able to secure the necessary and required credit and financing in an

amount sufficient to meet its ongoing capital needs on terms better than those in the Prepetition Collateral Documents, as modified by Self-Help.

15.     The Debtor has an immediate and critical need to obtain the requisite financing and credit through the DIP Loan addressed herein. The ability of the Debtor to pay its employees and maintain business relationships with its vendors requires the availability of necessary capital from the DIP Loan, the absence of which would immediately and irreparably harm the Debtor, the bankruptcy estate, creditors, and parties-in-interest. Absent approval of the DIP Loan Transaction outlined herein, the Debtor does not have sufficient available sources of working capital and financing to continue any kind of operations. In the absence of the DIP Loan and the use thereof, the Debtor's business and bankruptcy estate would suffer immediate and irreparable harm and all operations would cease.

16.     Approval of the DIP Loan as provided herein will provide the University with immediate access to borrowing availability to pay its current and ongoing operating expenses, including post-petition wages, until a final hearing can be scheduled. On a final basis, the DIP Loan Transaction will provide the University with the ability to pay post-petition wages and any allowed administrative expenses. If the University is not permitted access to capital to pay the aforementioned expenses and others that will be incurred post-petition in the ordinary course of its business operations, the University will be forced to cease operations, which would likely: (a) result in irreparable harm to its organization and (ii) jeopardize the Debtor's ability to reorganize and maximize value for all interested parties. The credit provided under the DIP Loan Transaction will enable the University to continue to satisfy its vendors, pay employees and operate in the ordinary course and in an orderly and reasonable manner to preserve the value of its bankruptcy estate for the benefit of its creditors and community at large. Further, the University believes that

the implementation of the DIP Loan Transaction as set forth herein will be viewed favorably by the University's vendors and employees and promote a successful reorganization. The approval of the relief requested herein is imperative.

## BASIS FOR RELIEF

17.     Sections 363 and 364 of the Bankruptcy Code, collectively, authorize trustees and debtors-in-possession, who are authorized to operate the business of the debtor under § 1108, to obtain unsecured and secured post-petition credit. Section 363(b)(1) provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). The use, sale, or lease of property of the estate, other than in the ordinary course of business, is authorized when there is a "sound business purpose" that justifies such action. *See Institutional Creditors of Cont'l Airlines, Inc. v. Cont'l Airlines, Inc. (In re Cont'l Airlines)*, 780 F.2d 1223, 1225-26 (5th Cir. 1986); *In re Phoenix Steel Corp.*, 82 B.R. 334, 335-36 (Bankr. D. Del. 1987) (stating that judicial approval under § 363(b) requires a showing that the proposed action is fair and equitable, in good faith and supported by a good business reason); *Bray v. Shenandoah Fed. Sav. & Loan Ass'n (In re Snowshoe Co.)*, 789 F2d. 1085, 1088 (4th Cir. 1986).

18.     Whether seeking approval under §§ 364(c) or 364(d) of the Bankruptcy Code, debtors-in-possession must demonstrate the following by a preponderance of the evidence:

(1) the proposed financing is an exercise of sound and reasonable business judgment;

(2) no alternative financing is available on any other basis;

(3) financing is in the best interests of the estate and its creditors; and

(4) no better offers, bids, or timely proposals are before the court.

*In re Clouter Creek Res. LLC (Clouter Creek)*, 669 B.R. 764, 781 (Bankr. D.S.C. 2025) (citations omitted); *accord In re DB Capital Holdings, LLC*, 454 B.R. 804, 822 (Bankr. D. Colo. 2011).

8

19.     The business judgment rule is a "policy of judicial restraint born of the recognition that directors are, in most cases, more qualified to make business decisions than are judges." *Int'l Ins. Co. v. Johns*, 874 F.2d 1447, 1458 n.20 (11th Cir. 1989); *see F.D.I.C. v. Castetter*, 184 F.3d 1040, 1044 (9th Cir. 1999) ("The general purpose of the business judgment rule is to afford directors broad discretion in making corporate decisions and to allow these decisions to be made without judicial second-guessing in hindsight."). Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *See Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). Where a valid business justification exists, the debtor's decision to use property out of the ordinary course of business enjoys a strong presumption that "in making a business decision the . . . corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992).

20.     Based on its experience seeking financing before the Petition Date, the Debtor believes that it would be unable to obtain post-petition financing or other financial accommodations from any alternative debtor-in-possession lender on more favorable terms and conditions than those for which approval is sought herein.

21.     The Debtor's business judgment, in this case and under these circumstances, does not run afoul of the provisions of, and policies underlying, the Bankruptcy Code. Courts grant debtors considerable deference in exercising their sound business judgment. *See, e.g., Bray v. Shenandoah Fed. Sav. & Loan Ass'n (In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986);

9

*In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("[C]ases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party-in-interest."). *See also In re Funding Sys. Asset Mgmt. Corp.*, 72 B.R. 87, 88 (Bankr. W.D. Pa. 1987); *In re Simasko Prod. Co.*, 47 B.R. 444, 449 (Bankr. D. Colo. 1985); *In re Curlew Valley Assocs.*, 14 B.R. 506, 513-14 (Bankr. D. Utah 1981). Here, the Debtor has determined that financing is available only under § 364(c) of the Bankruptcy Code and that entering into the DIP Loan Transaction is in the best interests of the Debtor and its estate.

22.     To obtain post-petition financing under 11 U.S.C. § 364(c), the court must find, after notice and a hearing, that the debtor "is unable to obtain unsecured credit allowable under section 503(b)(1) of [the Bankruptcy Code]." 11 U.S.C. § 364(c). *See In re Crouse Grp., Inc.*, 71 B.R. 544, 549 (Bankr. E.D. Pa. 1987) (secured credit under section 364(c) of the Bankruptcy Code is authorized, after notice and hearing, upon showing that unsecured credit cannot be obtained). Courts have articulated a three-part test to determine whether a debtor is entitled to financing under section 364(c) of the Bankruptcy Code, specifically looking at whether (i) the debtor is unable to obtain unsecured credit under 11 U.S.C. § 364(b) (i.e., by allowing a lender only an administrative claim); (ii) the transaction is necessary to preserve the assets of the estate; and (iii) the terms are fair, reasonable and adequate given the circumstances of the debtor-borrower and proposed lender(s). *See, e.g., In re Aqua Assocs.*, 123 B.R. 192, 195–96 (Bankr. E.D. Pa. 1991); *In re Ames Dep't Stores*, 115 B.R. at 37-40; *see also In re St. Mary Hosp.*, 86 B.R. 393, 401-02 (Bankr. E.D. Pa. 1988); *Crouse Grp.*, 71 B.R. at 549.

23.     The Debtor is in need of an immediate capital infusion, yet substantially all of the Debtor's existing assets are encumbered under its existing capital structure. Considering these circumstances, the Debtor, in consultation with its advisors, concluded that the DIP Loan would be its only financing option. Without post-petition financing, the Debtor lacks sufficient funds to pay its necessary employees, protect its property, and cover the projected costs of this Chapter 11 case. Absent the DIP Loan, the value of the bankruptcy estate would be significantly impaired to the detriment of all stakeholders. The Debtor therefore believes that the terms of the DIP Loan Transaction, as set forth in the DIP Loan Documents, are fair, reasonable, and adequate, all as more fully set forth herein. For all these reasons, the Debtor submits that it has met the standard for obtaining post-petition financing.

24.     In the event that a debtor is unable to obtain unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code, section 364(c) provides that a court "may authorize the obtaining of credit or the incurring of debt-- (1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of the Bankruptcy Code; (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or (3) secured by a junior lien on property of the estate that is subject to a lien." As described herein, the Debtor is unable to obtain unsecured credit. Therefore, approving superpriority claims to the extent and as set forth in the DIP Loan Documents is also reasonable and appropriate.

25.     A debtor need only demonstrate "by a good faith effort that credit was not available without" the protections afforded to potential lenders by Section 364(c) of the Bankruptcy Code. *In re Snowshoe Co.*, 789 F.2d 1085, 1088 (4th Cir. 1986); *see also In re Plabell Rubber Prods., Inc.*, 137 B.R. 897, 900 (Bankr. N.D. Ohio 1992). Moreover, in circumstances where only a few lenders likely can or will extend the necessary credit to a debtor, "it would be unrealistic and

unnecessary to require [the debtor] to conduct such an exhaustive search for financing." *In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), *aff'd sub nom. Anchor Sav. Bank FSB v. Sky Valley, Inc.*, 99 B.R. 117, 120 n.4 (N.D. Ga. 1989); *In re Ames Dep't Stores*, 115 B.R. at 37–39 (debtor must show that it made reasonable efforts to seek other sources of financing under section 364(a) and (b)). The Debtor is currently in circumstances where no lenders would extend the necessary credit under better terms than those offered by the DIP Loan Documents. Specifically, the Debtor is currently generating very little revenue, and the Debtor has no unencumbered property to pledge to any third-party financial institution or lender.

26.     For these reasons, as noted above, the Debtor reasonably believes that no alternative sources of financing exist or are reasonably available considering the realities imposed by its existing capital structure and its unsuccessful solicitation of alternative financing proposals before the Petition Date. Substantially all the Debtor's existing assets are encumbered under its existing capital structure. Thus, the Debtor has determined that the DIP Loan Transaction provides the most favorable terms available to the Debtor under the circumstances to fund this bankruptcy case. Therefore, the Debtor submits that the requirement that alternative credit on more favorable terms be unavailable is satisfied.

27.     The Debtor has negotiated with Self-Help at arms-length, in good faith, and pursuant to its sound business judgment and, as a result, the terms and conditions of the DIP Loan Transaction, as summarized herein, are fair and reasonable under the circumstances. Accordingly, Self-Help and all obligations incurred under the DIP Loan Transaction should be afforded the benefits of section 364(e) of the Bankruptcy Code.

28.     Absent authorization from the Court to obtain the Interim Order, authorizing the Debtor to enter into the DIP Loan Transaction and execute the DIP Loan Documents, the Debtor

will be immediately and irreparably harmed. As set forth above, the Debtor's ability to enter into the DIP Loan Transaction is critical to its ability to preserve any value for its creditors. Without immediate liquidity provided by access to the DIP Loan with Self-Help, the Debtor will be unable to conduct its normal business operations, and its bankruptcy estate, creditors, employees, former students, and other stakeholders will be immediately and irreparably harmed.

## REQUEST FOR INTERIM HEARING

29. The Debtor requests that the Court conduct a hearing to consider entry of the Interim Order authorizing the Debtor, from and after entry of the Interim Order until the Final Hearing, to receive initial funding under the DIP Facilities on the terms and conditions set forth in the Interim Order attached hereto as **EXHIBIT A**. This relief will enable the Debtor to preserve and maximize value and, therefore, avoid immediate and irreparable harm and prejudice to its bankruptcy estate and all parties in interest.

## REQUEST FOR FINAL HEARING

30. Pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), the Debtor requests that the Court set a date for the Final Hearing as soon as is practicable, and in no event more than forty-five (45) days after the Petition Date, and fix the time and date prior to the Final Hearing for parties to file objections to this Motion.

## WAIVER OF BANKRUPTCY RULES 6004(a) AND 6004(h)

31. To successfully implement the foregoing, the Debtor seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale or lease of property under Bankruptcy Rule 6004(h).

## RESERVATION OF RIGHTS

32. Nothing contained herein is intended or shall be construed as: (a) an admission as to the amount of, basis for, or validity of any claim against the Debtor under the Bankruptcy Code

or other applicable non-bankruptcy law; (b) a waiver of the Debtor's or any other party in interest's right to dispute any claim; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to Section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, extent, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtor's estate; or (g) a waiver of any claims or causes of action which may exist against any entity under the Bankruptcy Code or any other applicable law.

## NOTICE

33.     Notice of this Motion will be provided to the following parties: (a) the office of the Bankruptcy Administrator; (b) those creditors holding the 20 largest unsecured claims against the Debtor's estate; (c) secured creditors; and (d) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"). Based on the urgency of the circumstances surrounding this Motion and the nature of the relief requested herein, the Debtor respectfully submits that no other or further notice is required.

## CONCLUSION

WHEREFORE, for the reasons set forth herein the Debtor respectfully requests that the Court: (i) enter an interim order, substantially in the form attached hereto has **EXHIBIT A**; (ii) authorize the Debtor to execute any and all documentation necessary to consummate the DIP Loan Transaction; (iii) schedule a final hearing within thirty (30) days of the filing of this Motion; and (iv) grant such other and further relief as the Court deems just and proper.


This the 7th day of May, 2026.

**WALDREP WALL BABCOCK &
BAILEY PLLC**

*/s/ Jennifer B. Lyday*
Ciara L. Rogers (NC State Bar No. 42571)
Kevin L. Sink (NC State Bar No. 21041)
Jennifer B. Lyday (NC State Bar No. 39871)
3600 Glenwood, Suite 210
Raleigh, NC 27612
Telephone: 919-589-7985
Email: crogers@waldrepwall.com

*Proposed Counsel for the Debtor*

15

# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**RALEIGH DIVISION**

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **SAINT AUGUSTINE'S UNIVERSITY** | **Case No.: 26-01864-5-DMW** |
| **Debtor** | |

**INTERIM ORDER AUTHORIZING DEBTOR-IN-POSSESSION FINANCING AND APPROVAL OF SECURITY INTERESTS, LIENS, AND ENCUMBRANCES TO SELF-HELP VENTURE FUNDS**

Upon the Emergency Motion of Saint Augustine's University for Entry of Interim and Final Orders Authorizing Debtor-in-Possession Financing and Approval of Security Interests, Liens, and Encumbrances to Self-Help Ventures Fund (the "DIP Financing Motion") filed by Saint Augustine's University (the "Debtor"), as debtor and debtor-in-possession in the above-captioned Chapter 11 case, seeking entry of an interim order (this "Interim Order") pursuant to Sections 105(a), 363(b), and 364(c) of Title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 4001(b), 4001(c), and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtor to obtain post-petition financing from Self-Help Ventures Fund ("Self-Help" or the "DIP Lender") on the terms and conditions set forth herein and in the DIP Loan Documents (as defined below); and a hearing having been held before this Court on May 12, 2026 (the "Interim Hearing") to consider the relief requested in the DIP Financing Motion on an interim basis; and notice of the Interim Hearing having been given in accordance with the DIP Financing Motion; and the Court having considered the DIP Financing Motion, the declarations and evidence presented at the Interim Hearing, and the arguments of counsel; and it appearing that the relief requested in the DIP Financing Motion is in the best interests of the Debtor, its estate, its creditors, and all parties in interest; and after due deliberation and sufficient cause appearing therefor;

THE COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding in which final orders or judgments may be entered by a bankruptcy court pursuant to 28 U.S.C. § 157(b)(2). This Court has authority to hear this matter pursuant to the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984. Venue is appropriate in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      On April 27, 2026 (the "Petition Date"), the Debtor filed a voluntary petition seeking relief under Chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtor has continued to operate its organization and manage its property as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

3.      Notice of the DIP Financing Motion and the Interim Hearing was provided to the office of the Bankruptcy Administrator, those creditors holding the 20 largest unsecured claims against the Debtor's estate, secured creditors, and any party that has requested notice pursuant to Bankruptcy Rule 2002. Under the circumstances, such notice is adequate and sufficient, and no other or further notice is required.

4.      The Debtor has an immediate and critical need to obtain the financing and credit through the DIP Loan (as defined below). The Debtor does not have sufficient funding or income to continue its operations without the DIP Loan, and without the DIP Loan the Debtor will not have an opportunity to reorganize through this Bankruptcy Case. The ability of the Debtor to pay its employees and maintain business relationships with its vendors requires the availability of necessary capital from the DIP Loan, the absence of which would immediately and irreparably harm the Debtor, the bankruptcy estate, creditors, and parties-in-interest. The terms and conditions of the DIP Loan Transaction are fair, reasonable, and adequate given the circumstances of the Debtor and the DIP Lender.

5.      Based on its experience seeking financing before the Petition Date, the Debtor was unable to obtain post-petition financing or other financial accommodations from any alternative debtor-in-possession lender on more favorable terms and conditions than those for which approval is sought herein. Substantially all of the Debtor's existing assets are encumbered under its existing capital structure, and no alternative sources of financing exist or are reasonably available. The Debtor is unable to obtain unsecured credit allowable as an administrative expense under Section 503(b)(1) of the Bankruptcy Code.

6.      The DIP Loan Transaction has been negotiated at arms-length and in good faith between the Debtor and Self-Help, and all obligations incurred under the DIP Loan Transaction are entitled to the benefits of Section 364(e) of the Bankruptcy Code. Self-Help is extending credit to the Debtor pursuant to the DIP Loan Documents in good faith and is entitled to the protections of Section 364(e) of the Bankruptcy Code.

7.      Prior to the Petition Date, Self-Help purchased the Prepetition Collateral Documents relating to (i) the credit facility originally between the Debtor and Bank OZK in the

original principal amount of $7,000,000.00 (the "OZK Facility"), and (ii) the credit facility originally between the Debtor and Gothic Falcon, LLC up to $30,000,000.00 (the "Gothic Falcon Facility," and together with the OZK Facility, the "Prepetition Facilities"). The obligations under the Prepetition Facilities are collectively referred to as the "Prepetition Obligations," and the security instruments thereunder are collectively referred to as the "Prepetition Collateral Documents."

8.    The Debtor has satisfied the requirements of Section 364(c) of the Bankruptcy Code. The DIP Loan Transaction represents an exercise of the Debtor's sound and reasonable business judgment, no alternative financing is available on any other basis, the financing is in the best interests of the estate and its creditors, and no better offers, bids, or timely proposals are before the Court.

Based upon the foregoing findings of fact and conclusions of law, and after due deliberation, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED AS FOLLOWS:

1.    The DIP Financing Motion is GRANTED on an interim basis, as set forth herein. The Debtor is authorized, pursuant to Sections 105(a), 363(b), and 364(c) of the Bankruptcy Code, to obtain post-petition credit and financing from Self-Help Ventures Fund on the terms and conditions set forth in this Interim Order and in the DIP Loan Documents, in an aggregate principal amount not to exceed $2,000,000.00 on an interim basis, pending entry of a final order (the "Final Order") on the DIP Financing Motion. The Debtor is authorized to execute any and all documentation necessary to consummate the DIP Loan Transaction (as defined in the DIP Financing Motion), including any and all attendant loan documents (collectively, the "DIP Loan Documents").

2.    The DIP Facility shall be a debtor-in-possession revolving credit facility (the "DIP Facility"), subject to the terms set forth in the Term Sheet attached to the DIP Financing Motion as Exhibit B.

3.    As security for all obligations arising under the DIP Loan Documents, Self-Help is hereby granted, effective immediately and without the necessity of the execution, recordation, or filing of any instruments of further assurance, pursuant to Sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code, a continuing, valid, binding, enforceable, non-avoidable, and automatically perfected post-petition security interest in and lien upon (the "DIP Liens") the following property (collectively, the "DIP Loan Collateral"): (i) all real property of the Debtor, including the campus at 1315 Oakwood Avenue, Raleigh, North Carolina 27610; (ii) all personal property; (iii) all accounts, inventory, equipment, instruments, chattel paper, deposit accounts, general intangibles, investment property, and intellectual property; (iv) all rents, leases, and contracts; (v) all proceeds and products of the foregoing; and (vi) all of the collateral described in the Prepetition Collateral Documents.

3

4.      The DIP Liens shall constitute: (i) a first priority lien on all DIP Loan Collateral that is not otherwise subject to a valid and perfected lien as of the Petition Date; and (ii) a junior lien on all DIP Loan Collateral that is subject to a valid and perfected lien as of the Petition Date, subject only to the Carve-Out (defined below).

5.      Self-Help is hereby granted, pursuant to Section 364(c)(1) of the Bankruptcy Code, an allowed superpriority administrative expense claim (the "Superpriority Claim") against the Debtor's estate with priority over any and all administrative expenses of the kind specified in Sections 503(b) or 507(b) of the Bankruptcy Code, which claim shall be payable from and have recourse to all property of the Debtor and its estate, subject only to the Carve-Out.

6.      Notwithstanding anything herein to the contrary, the DIP Liens and the Superpriority Claim shall be subject to a carve-out (the "Carve-Out") for the following: (i) All statutory fees payable to the Bankruptcy Administrator or the Clerk of the Bankruptcy Court, including quarterly fees due under 28 U.S.C. § 1930; (ii) All reasonable and necessary fees, costs, and expenses of professionals retained by the Debtor and any official committee of unsecured creditors appointed in the Chapter 11 Case (if any), incurred prior to the delivery of a Carve-Out Trigger Notice (as defined below), in an aggregate amount not to exceed the amounts set forth in the DIP Budget; and (iii) Following delivery of a Carve-Out Trigger Notice, all reasonable and necessary unpaid fees, costs, and expenses of such professionals in an aggregate amount not to exceed $50,000.00 for the Debtor's professionals and $25,000.00 for the Committee's professionals (if any) (collectively, the "Post-Trigger Carve-Out").

7.      A "Carve-Out Trigger Notice" means a written notice delivered by the DIP Lender to the Borrower and its counsel following the occurrence of an Event of Default, stating that the Carve-Out is triggered. Upon delivery of a Carve-Out Trigger Notice, the Debtor and the Committee (if any) shall have the benefit of the Post-Trigger Carve-Out to wind down their professional activities.

8.      The DIP Liens and all security interests and liens granted pursuant to this Interim Order shall be deemed automatically perfected upon entry of this Interim Order without the necessity of any further action by the Debtor or Self-Help, including without limitation, the filing of any financing statements, mortgages, deeds of trust, or other instruments of further assurance. Notwithstanding the foregoing, Self-Help is authorized, but not required, to file or record any such instruments, and the Debtor shall cooperate with Self-Help in the execution and filing thereof.

4

9.      The DIP Liens, the Superpriority Claim, and all other rights and interests granted to Self-Help pursuant to this Interim Order and the DIP Loan Documents shall be entitled to the protections of Section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed, or modified on appeal or otherwise.

10.      The requirements of Bankruptcy Rule 6004(a) are waived. The 14-day stay provided in Bankruptcy Rule 6004(h) is waived, and this Interim Order shall be effective immediately upon entry.

11.      A final hearing (the "Final Hearing") on the DIP Financing Motion shall be held before this Court _____, May __, 2026, at __:00 _.m. at the United States Bankruptcy Court, 300 Fayetteville St., Third Floor, Raleigh, NC 27601.

12.      Any objections to the entry of the Final Order on the DIP Financing Motion shall be filed and served no later than _____, at _____ (the "Objection Deadline"), upon: (i) counsel for the Debtor, Waldrep Wall Babcock & Bailey PLLC, 3600 Glenwood, Suite 210, Raleigh, NC 27612 (Attn: Ciara L. Rogers); (ii) counsel for Self-Help; and (iii) the Office of the Bankruptcy Administrator.

13.      Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to the rights of any party in interest to object to the DIP Financing Motion at the Final Hearing.

14.      This Interim Order shall be binding upon and inure to the benefit of the Debtor, Self-Help, and their respective successors, assigns, heirs, executors, and representatives. The provisions of this Interim Order, and any actions taken pursuant hereto, shall survive the entry of any order: (a) confirming a Chapter 11 plan; (b) converting this Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code; or (c) dismissing this Chapter 11 Case.

15.      To the extent of any inconsistency between the provisions of this Interim Order, the DIP Financing Motion, and the DIP Loan Documents, the terms of this Interim Order shall govern and control.

16.      The Bankruptcy Court shall have exclusive jurisdiction over all matters arising out of or relating to the implementation, interpretation, and enforcement of this Interim Order and the DIP Facility documents. The parties irrevocably consent to the jurisdiction of the Bankruptcy Court for such purposes.

END OF DOCUMENT

5

**EXHIBIT B**

# DEBTOR-IN-POSSESSION FINANCING TERM SHEET

**IN RE:**

**SAINT AUGUSTINE'S UNIVERSITY**

**Case No. 26-01864-5-DMW (Bankr. E.D.N.C.) Chapter 11**

---

**THIS TERM SHEET IS FOR DISCUSSION PURPOSES ONLY AND DOES NOT CONSTITUTE A COMMITMENT OR AN AGREEMENT TO LEND. ANY DIP FINANCING IS SUBJECT TO, AMONG OTHER THINGS, THE EXECUTION OF DEFINITIVE DOCUMENTATION AND THE ENTRY OF ORDERS BY THE BANKRUPTCY COURT APPROVING SUCH FINANCING.**

---

## I. PARTIES AND BACKGROUND

**Borrower/Debtor:** Saint Augustine's University (a/k/a Saint Augustines University, a/k/a St. Augustines University, a/k/a St. Augustine's University, a/k/a Saint Augustines College, a/k/a Saint Augustine's College, a/k/a St. Augustines College, a/k/a St. Agustine's College), a North Carolina nonprofit corporation (the "Debtor" or "Borrower"), as debtor and debtor-in-possession in the above-captioned Chapter 11 case.

**Lender/DIP Lender:** Self-Help Ventures Fund, a North Carolina nonprofit corporation ("Self-Help" or "DIP Lender"), located at 301 W. Main Street, Durham, NC 27701.

**Bankruptcy Case:** Case No. 26-01864-5-DMW, pending in the United States Bankruptcy Court for the Eastern District of North Carolina, Raleigh Division (the "Bankruptcy Court"), filed on April 27, 2026 (the "Petition Date").

**Debtor's Counsel:** Ciara L. Rogers, Waldrep Wall Babcock & Bailey PLLC, 3600 Glenwood Avenue, Suite 210, Raleigh, NC 27612.

**Background — Prepetition Lending Relationship:** Prior to the Petition Date, Self-Help held two prepetition secured credit facilities with the Borrower:

(a) *OZK Facility.* A revolving line of credit in the principal amount of Seven Million Dollars ($7,000,000), originally extended by Bank OZK and subsequently assigned to Gothic OZK, LLC, and then to Self-Help. The OZK Facility is governed by a Loan Agreement dated October 11, 2023, as modified by that certain Modification to Loan Agreement and Promissory Note effective December 30, 2025 (the "OZK Modification"). The OZK Facility bears interest at nine percent (9%) per annum, with a default rate of twelve percent (12%) per annum, and has a maturity date of January 1, 2036. The OZK Facility is secured by a Mortgage, Security Agreement and Financing Statement, and an Assignment of Rents, Leases and Contracts (collectively, the "OZK Security Instruments").

1

**EXHIBIT B**

(b) *Gothic Falcon Facility.* A credit facility providing for credit extensions of up to Thirty Million Dollars ($30,000,000) in the aggregate, originally extended by Gothic Falcon, LLC, and subsequently assigned to Self-Help. The Gothic Falcon Facility is governed by a Credit Facilities Agreement dated August 16, 2024, as amended through seven prior amendments and further modified by the Eighth Modification to Credit Facility Agreement effective December 30, 2025 (the "Gothic Falcon Modification"). The Gothic Falcon Facility bears interest at nine percent (9%) per annum, with a default rate of three percent (3%) above the applicable rate, and has a maturity date of January 1, 2036. The Gothic Falcon Facility is secured by a Deed of Trust, Assignment of Rents and Leases, Collateral Assignment of Property Agreements, Security Agreement and Fixture Filing (the "Gothic Falcon Security Instruments").

The OZK Facility and the Gothic Falcon Facility are collectively referred to herein as the "Prepetition Facilities," the obligations thereunder as the "Prepetition Obligations," and the security instruments thereunder as the "Prepetition Collateral Documents."

## II. DIP FACILITY — SUMMARY OF TERMS

**Type of Facility:** Debtor-in-possession revolving credit facility (the "DIP Facility").

**Purpose:** The proceeds of the DIP Facility shall be used solely to fund the Borrower's ongoing operating expenses during the pendency of the Chapter 11 case, including payroll, utilities, insurance, vendor payments, professional fees (subject to the Carve-Out), and other ordinary-course expenditures approved by the DIP Lender, all in accordance with the DIP Budget (as defined below). Proceeds may also be used for settlement of federal and North Carolina tax liabilities, payment of other past or present obligations of the Borrower, and for working capital, all as approved in advance by the DIP Lender.

**Facility Amount:** $2,000,000.00 (the "DIP Commitment").

**Interest Rate:** Nine percent (9%) per annum (the "Applicable Rate"), consistent with the interest rate under the Prepetition Facilities.

**Default Rate:** The Applicable Rate plus three percent (3%) per annum (i.e., twelve percent (12%) per annum) upon the occurrence and during the continuance of an Event of Default.

**Maturity Date:** The earliest of (a) 12 months after the Petition Date, (b) the effective date of a confirmed Chapter 11 plan, (c) the consummation of a sale of all or substantially all of the Debtor's assets pursuant to 11 U.S.C. § 363, (d) the date of acceleration of the DIP Facility following an Event of Default, or (e) the date of conversion of the Chapter 11 case to a case under Chapter 7 or the dismissal of the Chapter 11 case (the "Maturity Date").

**Payments:** Interest shall accrue on the unpaid principal balance of the DIP Facility at the Applicable Rate. Unless otherwise agreed, Borrower shall pay all unpaid principal and accrued interest due on the Maturity Date.

**Payment Method:** All payments shall be made in immediately available funds, without offset, in lawful money of the United States of America, by electronic fund transfer debit entries to Borrower's account at an Automated Clearing House ("ACH") member bank. Each payment shall be initiated by DIP Lender through the ACH network for settlement on or about the respective due

**EXHIBIT B**

dates after at least one (1) business days' notice to Borrower. Prior to each payment due date, Borrower shall deposit and/or maintain sufficient funds in its account to cover each debit entry.

**Prepayment:** The Borrower shall have the right to prepay the DIP Facility, in whole at any time or in part from time to time, with accrued interest on the principal amount prepaid to the date of such prepayment, without premium or penalty.

**Fees:** No loan monitoring fees, commitment fees or closing fees shall be assessed under the DIP Facility.

## III. COLLATERAL AND SECURITY

**Collateral:** The DIP Facility shall be secured by a lien on and security interest in all of the Debtor's assets, whether now owned or hereafter acquired, real and personal, tangible and intangible, including but not limited to: (a) all real property of the Debtor, including the campus at 1315 Oakwood Avenue, Raleigh, NC 27610; (b) all personal property; (c) all accounts, inventory, equipment, instruments, chattel paper, deposit accounts, general intangibles, investment property, and intellectual property; (d) all rents, leases, and contracts; (e) all proceeds and products of the foregoing; and (f) all of the collateral described in the Prepetition Collateral Documents (collectively, the "DIP Collateral").

**Superpriority Administrative Expense Claim:** Pursuant to 11 U.S.C. § 364(c)(1), all obligations arising under the DIP Facility shall constitute allowed superpriority administrative expense claims against the Debtor's estate, with priority over all administrative expense claims and unsecured claims of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to 11 U.S.C. §§ 105, 326, 328, 330, 331, 503(b), 507(a), 507(b), or 726 of the Bankruptcy Code, subject only to the Carve-Out.

**Lien Priority:** The liens and security interests granted to the DIP Lender shall have the following priority: (i) first-priority liens on all unencumbered assets of the Debtor pursuant to 11 U.S.C. § 364(c)(2); and (ii) junior liens on all assets of the Debtor that are subject to valid, perfected, and non-avoidable liens, pursuant to 11 U.S.C. § 364(c)(3).

## IV. DISBURSEMENT PROCEDURES

**Trust Account:** All DIP Facility proceeds shall be held in a debtor in possession trust account in the name of the Borrower (the "Trust Account"), from which payments may be issued to third parties for purposes approved by the DIP Lender.

**Conditions for Disbursements:** Prior to and as a condition of each disbursement under the DIP Facility: (a) Borrower shall submit such items as DIP Lender may reasonably require to support the amount of the disbursement sought; and (b) such expenditures shall be in material compliance with the DIP Budget.

**Timing of Disbursements:** DIP Lender shall have no obligation to make disbursements more frequently than once per month. DIP Lender must receive all materials described above no later five (5) business days prior to the requested disbursement date, provided that DIP Lender reserves the right to require additional time if reasonably necessary for DIP Lender or its representatives to inspect and approve the request submitted by Borrower.

**EXHIBIT B**

**Method of Disbursements:** Upon receipt of DIP Lender's form of disbursement request voucher completed and executed by Borrower, compliance by Borrower with all the terms and conditions of the DIP Facility and the DIP Order, and approval of such request by DIP Lender, DIP Lender will transfer funds to the Trust Account or otherwise advance funds to Borrower as determined by DIP Lender. Interest shall begin to accrue on the date of such transfer. DIP Lender reserves the right to require that transfers be made directly to suppliers, contractors, or other third parties or jointly to Borrower and suppliers, contractors, or other third parties.

**Records.** Borrower shall provide to DIP Lender records of any payment made on Borrower's behalf from the Trust Account within 10 days of such payment.  DIP Lender shall provide to Borrower records of any payment made on Borrower's behalf within 10 days of such payment.

## V. DIP BUDGET

**DIP Budget:** The Borrower shall prepare and deliver to the DIP Lender a detailed 13-week cash-flow budget (the "DIP Budget"), which shall be approved by the DIP Lender prior to entry of the Interim Order. The DIP Budget shall set forth, on a weekly basis, the Debtor's projected cash receipts and disbursements during the term of the DIP Facility.

**Budget Variance Covenant:** The Borrower shall not permit actual aggregate disbursements for any four-week rolling test period to exceed the aggregate amount set forth in the DIP Budget for the corresponding test period by more than 5% (the "Disbursement Variance").

**Budget Updates:** The DIP Budget shall be updated every four (4) weeks (or more frequently as the DIP Lender may reasonably require), and each updated budget shall be subject to the DIP Lender's prior written approval.

## VI. CONDITIONS PRECEDENT TO CLOSING AND INITIAL DISBURSEMENT

**Interim Order:** Entry by the Bankruptcy Court of an interim order (the "Interim Order") in form and substance satisfactory to the DIP Lender, authorizing the DIP Facility on an interim basis pursuant to 11 U.S.C. § 364 and Bankruptcy Rule 4001, including (a) the superpriority administrative expense claim and (b) the Carve-Out.

**Final Order:** Entry by the Bankruptcy Court of a final order (the "Final Order") in form and substance satisfactory to the DIP Lender, authorizing the DIP Facility on a final basis after notice and a hearing as required by 11 U.S.C. § 364 and Bankruptcy Rules 4001(c) and (d), no later than 45 days after the Petition Date.

**Other Conditions:** The following additional conditions must be satisfied or waived by the DIP Lender prior to the initial disbursement:

(a) Delivery to DIP Lender of duly executed originals or copies of the DIP credit agreement, the DIP promissory note, and all other DIP Facility documentation.

(b) Delivery of the DIP Budget approved by the DIP Lender.

**EXHIBIT B**

(c) Evidence satisfactory to the DIP Lender that all necessary corporate authorizations, resolutions, and consents have been obtained by the Borrower.

(d) No Event of Default shall have occurred and be continuing.

(e) The Borrower shall have filed all first-day motions and other pleadings reasonably required by the DIP Lender.

(f) Receipt by DIP Lender of evidence that all closing conditions set forth herein have been satisfied, with such modifications and additions thereto as DIP Lender may reasonably require.

(g) Such other documents, instruments, and agreements as the DIP Lender may reasonably request.

## VII. REPRESENTATIONS AND WARRANTIES

The Borrower shall make the following representations and warranties as of the closing date and as of each subsequent disbursement date:

(a) The Borrower is a nonprofit corporation duly organized, validly existing, and in good standing under the laws of the State of North Carolina.

(b) The Borrower has all necessary corporate power and authority to execute, deliver, and perform its obligations under the DIP Facility documents, and all such actions have been duly authorized.

(c) The execution, delivery, and performance of the DIP Facility documents do not and will not violate any law, regulation, order, or agreement applicable to the Borrower, subject to the entry of the DIP Orders.

(d) The Petition was duly authorized and filed in accordance with applicable law on April 27, 2026.

(e) The DIP Budget has been prepared in good faith and is based on assumptions believed by the Borrower to be reasonable as of the date thereof.

(f) The Borrower holds good and marketable title to all DIP Collateral.

(g) No Event of Default has occurred and is continuing under the DIP Facility documents.

(h) All financial information and reports provided or to be provided by the Borrower are or will be true, complete, and accurate in all material respects.

## VIII. AFFIRMATIVE COVENANTS

The Borrower shall comply with the following affirmative covenants during the term of the DIP Facility:

(a) Comply with the DIP Budget, subject to the permitted variance thresholds.

(b) Maintain and preserve its corporate existence and all permits and licenses necessary to preserve its assets.

(c) Maintain adequate insurance on all DIP Collateral.

**EXHIBIT B**

(d) File all required monthly operating reports with the Bankruptcy Court and the Bankruptcy Administrator in compliance with Local Bankruptcy Rule 4002-1(c) and the Order Regarding Administration of Estate.

(e) Timely file all postpetition Form 990 and Form 1098-T filing and pay all postpetition taxes, including all federal and state tax obligations, subject to DIP Lender's release of sufficient funds to do so.

(f) Permit DIP Lender and its representatives to inspect the Borrower's books, records, and properties upon reasonable notice.

(g) Maintain all DIP Collateral in good condition and repair.

(h) Cooperate with and be accountable to the Bankruptcy Administrator as required by the Order Regarding Administration of Estate.

(i) Use the proceeds of the DIP Facility solely for purposes set forth in the DIP Budget and as approved in advance by the DIP Lender.

(j) Notify DIP Lender of any change in the tax-exempt status of the Debtor.

## IX. NEGATIVE COVENANTS

The Borrower shall comply with the following negative covenants during the term of the DIP Facility:

(a) No incurrence of additional indebtedness or liens without the prior written consent of the DIP Lender and Bankruptcy Court approval.

(b) No sale, transfer, lease, or other disposition of any DIP Collateral or other material assets outside the ordinary course of business without the prior written consent of the DIP Lender and Bankruptcy Court approval.

(c) No payment of prepetition claims except as expressly authorized by the DIP Orders or other orders of the Bankruptcy Court.

(d) No material modification of the Debtor's business operations or organizational structure without the prior written consent of the DIP Lender.

(e) No superpriority administrative expense claims or liens equal or senior to those of the DIP Lender, except for the Carve-Out.

(f) No settlement of any claim, controversy, or litigation in excess of $25,000.00 without the prior written consent of the DIP Lender.

(g) Segregation of all cash collateral.

## X. MILESTONES

The Borrower shall comply with the following milestones (each, a "Milestone"):

6

**EXHIBIT B**

(a) No later than 21 days after the Petition Date, entry of the Interim Order approving the DIP Facility on an interim basis.

(b) No later than 45 days after the Petition Date, entry of the Final Order approving the DIP Facility on a final basis.

(c) Failure to meet any Milestone shall constitute an Event of Default, unless waived by the DIP Lender in writing.

## XI. CARVE-OUT

**Carve-Out:** The liens and superpriority claims of the DIP Lender shall be subject to a carve-out (the "Carve-Out") for the following:

(a) All statutory fees payable to the Bankruptcy Administrator or the Clerk of the Bankruptcy Court, including quarterly fees due under 28 U.S.C. § 1930.

(b) All reasonable and necessary fees, costs, and expenses of professionals retained by the Debtor and any official committee of unsecured creditors appointed in the Chapter 11 case (if any), incurred prior to the delivery of a Carve-Out Trigger Notice (as defined below), in an aggregate amount not to exceed the amounts set forth in the DIP Budget.

(c) Following delivery of a Carve-Out Trigger Notice (as defined below), all reasonable and necessary unpaid fees, costs, and expenses of such professionals in an aggregate amount not to exceed $50,000.00 for the Debtor's professionals and $25,000.00 for the Committee's professionals (if any) (collectively, the "Post-Trigger Carve-Out").

**Carve-Out Trigger Notice:** A "Carve-Out Trigger Notice" means a written notice delivered by the DIP Lender to the Borrower and its counsel following the occurrence of an Event of Default, stating that the Carve-Out is triggered. Upon delivery of a Carve-Out Trigger Notice, the Debtor and the Committee (if any) shall have the benefit of the Post-Trigger Carve-Out to wind down their professional activities.

## XII. EVENTS OF DEFAULT

Each of the following shall constitute an "Event of Default" under the DIP Facility:

(a) Failure to make any payment of principal, interest, fees, or other amounts due under the DIP Facility when due.

(b) Any representation or warranty made by the Borrower in connection with the DIP Facility proves to have been untrue or misleading in any material respect when made.

(c) Breach of any covenant or agreement contained in the DIP Facility documents, subject to applicable cure periods.

(d) Failure to comply with the DIP Budget, allowing for the Disbursement Variance.

(e) Conversion of the Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code.

(f) Dismissal of the Chapter 11 case.

7

**EXHIBIT B**

(g) Appointment of a Chapter 11 trustee or an examiner with expanded powers.

(h) Entry of an order granting any other party a superpriority administrative expense claim or lien that is equal or senior to that of the DIP Lender, other than the Carve-Out.

(i) Failure to achieve any Milestone by the applicable deadline.

(j) Entry of an order modifying, reversing, revoking, staying, rescinding, vacating, or amending the Interim Order or Final Order in a manner adverse to the DIP Lender without the DIP Lender's prior written consent.

(k) Entry of an order confirming a Chapter 11 plan that does not provide for payment in full of all DIP Obligations on the effective date thereof.

(l) The grant by the Debtor of any lien on DIP Collateral without the DIP Lender's prior written consent, other than liens permitted under the DIP Orders.

(m) The Debtor seeks, or any other party obtains, an order staying, reversing, or modifying the automatic stay relief granted to the DIP Lender under the DIP Orders.

(n) The Debtor's failure to maintain its tax exempt status.

## XIII. REMEDIES UPON DEFAULT

**Expedited Hearing on Request for Automatic Stay Relief:** Upon the occurrence of an Event of Default, and after the expiration of five (5) business days' written notice to the Borrower, the Borrower's counsel, the Bankruptcy Administrator, and any Committee counsel (the "Remedies Notice Parties"), DIP Lender shall be entitled, on at least three (3) business days' written notice to the Remedies Notice Parties, to file a motion with the Court seeking emergency relief from the automatic stay under 11 U.S.C. § 362 to enable DIP Lender to exercise all rights and remedies under the DIP Facility documents, including, without limitation:

(a) Declaring all DIP Obligations immediately due and payable.

(b) Terminating the DIP Commitment and ceasing all further disbursements.

(c) Exercising all rights and remedies with respect to the DIP Collateral, including foreclosure and sale.

(d) Applying any cash or proceeds of DIP Collateral to the DIP Obligations.

(e) Exercising any other remedies available under the DIP Facility documents, the DIP Orders, the Bankruptcy Code, or applicable law.

**Protective Advances:** Notwithstanding the occurrence of an Event of Default, the DIP Lender may, in its sole discretion, continue to make advances under the DIP Facility for the purpose of preserving and protecting the DIP Collateral, including the payment of insurance premiums, taxes, and similar obligations. All such protective advances shall constitute DIP Obligations secured by the DIP Collateral and entitled to the superpriority administrative expense claim status.

**EXHIBIT B**

## XIV. WAIVER OF SURCHARGE AND MARSHALING

**Section 506(c) Waiver:** Except for the Carve-Out, no costs or expenses of administration shall be charged against or recovered from the DIP Lender or the DIP Collateral pursuant to 11 U.S.C. § 506(c) or any similar provision of law, and no such claim shall be asserted against the DIP Lender or the DIP Collateral without the DIP Lender's prior written consent.

**Marshaling Waiver:** The DIP Lender shall not be subject to the equitable doctrine of marshaling or any similar doctrine with respect to the DIP Collateral.

## XV. INDEMNIFICATION

The Borrower shall indemnify, defend, and hold harmless the DIP Lender and its officers, directors, employees, agents, advisors, and counsel (collectively, the "Indemnified Parties") from and against any and all claims, damages, losses, liabilities, costs, and expenses (including reasonable attorneys' fees and expenses) arising out of or relating to the DIP Facility, the DIP Orders, or the Debtor's use of DIP Facility proceeds, except to the extent resulting from the gross negligence or willful misconduct of the Indemnified Parties. All indemnification obligations shall constitute DIP Obligations entitled to superpriority administrative expense claim status.

## XVI. GOVERNING LAW; JURISDICTION

**Governing Law:** This Term Sheet and the DIP Facility documents shall be governed by, and construed and enforced in accordance with, the laws of the State of North Carolina, without regard to its conflict-of-laws provisions, except to the extent preempted by the Bankruptcy Code or other applicable federal law.

**Jurisdiction:** The Bankruptcy Court shall have exclusive jurisdiction over all matters arising out of or relating to the DIP Facility and the DIP Facility documents. The parties irrevocably consent to the jurisdiction of the Bankruptcy Court for such purposes.

## XVII. MISCELLANEOUS

**Counterparts:** The DIP Facility documents may be executed in any number of counterparts, each of which shall be deemed an original. Signatures may be executed and transmitted by facsimile or electronic means (such as PDF or Docusign), which shall be deemed original, wet-inked documents.

**Amendments:** No amendment, modification, or waiver of any provision of the DIP Facility documents shall be effective unless in writing and signed by the DIP Lender and the Borrower, and, to the extent required, approved by the Bankruptcy Court.

**Waiver Rights:** DIP Lender may, at its sole discretion, waive any condition set forth herein. No waiver of any term, provision, or condition of the DIP Facility, whether by conduct or otherwise, in any one or more instances, shall be deemed to be or construed as a further or continuing waiver of any such term, provision, or condition or as a waiver of any other term, provision, or condition.

**Notices:** All notices to the DIP Lender shall be delivered as follows:

9

**EXHIBIT B**

Self-Help Ventures Fund 301 W. Main Street Durham, NC 27701 Attn: Chief Executive Officer Email: martin.eakes@self-help.org

Self-Help Ventures Fund 301 W. Main Street Durham, NC 27701 Attn: General Counsel Email: dave.shumann@self-help.org

with a copy to:

Ward and Smith, P.A., 751 Corporate Center Drive, Suite 300, Raleigh, NC 27607 Attn: Paul A. Fanning Email: paf@wardandsmith.com

All notices to the Borrower shall be delivered as follows:

Saint Augustine's University 1315 Oakwood Avenue Raleigh, NC 27610

with a copy to:

Waldrep Wall Babcock & Bailey PLLC 3600 Glenwood Avenue, Suite 210 Raleigh, NC 27612
Attn: Ciara L. Rogers Email: crogers@waldrepwall.com
Attn: Jennifer Lyday Email: jlyday@waldrepwall.com

**Court Approval:** The parties acknowledge that the DIP Facility is subject to entry of the Interim Order and the Final Order by the Bankruptcy Court pursuant to 11 U.S.C. § 364 after appropriate notice and hearing. Without limiting the foregoing, the following provisions of this Term Sheet specifically require Bankruptcy Court approval:

(a) Superpriority administrative expense claim status under 11 U.S.C. § 364(c)(1);

(b) Expedited hearing on automatic stay relief upon an Event of Default;

(c) Waiver of rights under 11 U.S.C. § 506(c);

(d) The Carve-Out; and

(e) Any other provisions that modify or supplement rights or obligations under the Bankruptcy Code.

**Definitive Documentation:** This Term Sheet is intended to outline the principal terms of the DIP Facility and is not intended to be, nor shall it be construed as, a binding agreement or commitment to lend. The DIP Facility shall be subject to definitive DIP Facility documentation in form and substance satisfactory to the DIP Lender and the Borrower, and the entry of appropriate orders by the Bankruptcy Court.

**[*SIGNATURE PAGE FOLLOWS*]**

**EXHIBIT B**

**DIP LENDER:**

SELF-HELP VENTURES FUND, a North Carolina nonprofit corporation

By: _____
Name: _____
Title: _____


**BORROWER:**

SAINT AUGUSTINE'S UNIVERSITY, a North Carolina nonprofit corporation

By: _____
Name: _____
Title: _____


ND:4937-6855-0823, v. 5

11