**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**RALEIGH DIVISION**

**IN RE:**
**SAINT AUGUSTINE'S UNIVERSITY**
**DEBTOR**

**CHAPTER 11**
**CASE NO.: 26- 01864-5-DMW**

**APPLICATION TO EMPLOY REAL ESTATE ADVISOR**

NOW COMES Saint Augustine's University (the "Debtor"), by and through undersigned counsel, and respectfully requests authority to employ Avison Young-North Carolina, LLC ("Advisor") as a real estate advisor and broker to assist the Debtor in developing a plan for redevelopment and/or disposition of certain of the Debtor's real property assets. In support of this Application, the Debtor respectfully shows the Court the following:

1. The Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding withing the meaning of 28 U.S.C. § 157(b)(2). Venue for this proceeding and Application is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The bases for the relief requested herein are sections 105, 327, 328, and 1107 of the United States Bankruptcy Code (the "Bankruptcy Code"), Rules 2002, 2014, and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

3. On April 27, 2026 (the "Petition Date"), the Debtor filed a voluntary petition for relief pursuant to Chapter 11 of the United States Bankruptcy Code ("Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of Noth Carolina. The Debtor continues in possession of its assets, operates its business, and manages its affairs as a debtor-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

4. No committee of creditors has been formed in this case.

5. On May 26, 2026, the Debtor filed its Schedule A/B [DE 47]. Schedule A/B list all

parcels of real property owned by the Debtor[1]. A comprehensive list of the Debtors property is also attached hereto as Exhibit A (collectively, the "Real Property").

6. The Debtor seeks to employ the Advisor to, *inter alia*: (i) engage a third-party appraiser to value the Real Property from the perspective of how the Debtor intends to use the property; (ii) facilitate the creation of a plan to redevelop some or all of the Real Property with a focus on retaining that certain portion of the Real Property referred to as the "Main Campus" for educational, healthcare, or technology focused activities; (iii) identify and engage third-parties from the public and private sector; (iv) assist the Debtor in any negotiates of any sale, transfer, or other disposition of any portion of the Real Property or any interest therein; (v) solicit and advise the Debtor on opportunities for exit financing, debt refinancing, and/or venture capital funding; (vi) otherwise using its best efforts to facilitate the disposition and redevelopment of the Real Property. The full scope of services to be provided by the Advisor are more fully set forth in the Engagement Agreement, which is attached hereto as Exhibit A. The aforementioned services and the full list of services to be provided by the Advisor, shall collectively be referred to as the "Services."

7. It is necessary to employ the services of the Advisor to assist the Debtor because through the Advisor's efforts the Debtor will generate funds necessary to pay its Creditors and fund its future operations.

8. The Advisor was selected after a rigorous selection process where approximately ten (10) firms signed non-disclosure agreements, made proposals, and/or presented to the Debtor's Board of Trustees.

9. The Advisor has an office in Raleigh where its agents have deep connections in the

---

[1] On August 14, 2026, the Debtor filed an Amended Schedule A/B [Doc No. 97]; however, the amendments did not change any information about the Debtor's real property assets.

community, as well as over 5000 global commercial real estate advisors and experience sourcing international investment capital and identifying and engaging global higher education partners. Further, the Advisor has in-house employees that are able to provide urban planning and market intelligence services to develop a redevelopment concept that can actually be brought to market.

10. More specifically, the Advisor has previously worked with leading local firms including Kane Realty, Grubb Ventures, SLI Capital, and Foulger Pratt on land sales, equity placement, and investment sales transactions in the Raleigh market.

11. The term of the engagement between the Debtor and the Advisor is twelve (12) calendar months from the entry of an order authorizing the Debtor to employ the Advisor. Importantly, the agreement shall be terminable by either the Debtor or the Advisor upon thirty (30) days' prior written notice without payment of any termination fee, breakup fee, or penalty.

12. The Broker has agreed to represent the Debtor for compensation and reimbursement of expenses, as follows:

a. Retainer. A one-time retainer of $50,000.00 paid within thirty (30) days of the entry of an order authorizing the Debtor to employ Broker. The retainer shall be fully creditable against future commissions earned.

b. Expense Reimbursement. Debtor shall reimburse Advisor for all preapproved costs and expenses incurred for the provision of the Services.

c. Commissions for Land Transactions. The total commission due hereunder for each individual sale or alternative transaction shall be calculated on a marginal tiered basis as follows: (a) five percent (5.0%) of the portion of the Gross Sale Price up to and including $5,000,000; plus (b) four percent (4.0%) of the portion of the Gross Sale Price greater than $5,000,000 and up to and including $15,000,000; plus (c) three percent (3.0%) of the portion of the Gross Sale Price exceeding $15,000,000. If an outside broker procures the purchaser, the outside broker will be compensated by purchaser. The aggregate sale commissions for land transactions payable to Advisor shall not exceed $7,500,000.00

d. Commissions for Financing Services. If Advisor arranges financing for an disposition of the Real Property, other than financing from Self-Help

> Ventures Fund, then Broker shall be entitled to a commission equal to 1.5% of the gross dollar amount of financing transaction. Advisor shall not be entitled to any commission for funds loaned to the Debtor by Self-Help Ventures Fund.

13. The Advisor understands that its employment and compensation are subject to approval by this Court.

14. To the best of the Debtor's knowledge and belief, the Advisor is disinterested as that term is defined in 11 U.S.C. § 101(14) and holds no interest adverse to or in connection with the Debtor, the Debtor's creditors, the Bankruptcy Administrator, or any other party-in-interest or their respective attorneys or agents.

15. The Debtor believes that the services to be provided by the Advisor can and will provide specific benefits to the Debtor and will enhance the administration of this bankruptcy case. Further, the Debtor believes that the employment of the Advisor is in the best interest of the Debtor's bankruptcy estate and all parties-in-interest.

WHEREFORE, the Debtor requests that the Court (i) authorize the Debtor to employ and retain the Advisor to provide services to the Debtor as set forth herein; (ii) enter an order substantially in the form attached hereto as Exhibit B; and (iii) grant the Debtor such other and further relief as the Court deems just and proper.

Respectfully submitted on the 20th day of August, 2026.

**WALDREP WALL BABCOCK & BAILEY PLLC**

*s/ Ciara L. Rogers*
Ciara L. Rogers (NC State Bar No. 42571)
Kevin L. Sink (NC State Bar No. 21041)
3600 Glenwood, Suite 210
Raleigh, NC 27612
Telephone: (984) 480-2005
Email: crogers@waldrepwall.com
*Counsel for the Debtor*

# EXHIBIT A

AVISON YOUNG

**COMBINED AGREEMENT TO PROVIDE SERVICES TO SAINT AUGUSTINE'S UNIVERSITY**

**I. EXCLUSIVE RIGHT TO SELL AGREEMENT INCLUDING ALTERNATIVE TRANSACTIONS**

Saint Augustine's University, a North Carolina nonprofit corporation, acting by and through the authority of its Board of Trustees ("Owner"), appoints Avison Young - North Carolina, LLC ("Avison Young") as its sole agent and grants to Avison Young the exclusive right to sell the real property pursuant to the terms of this agreement ("Agreement"). Subject to the approval of the Bankruptcy Court, Owner represents and warrants that this Agreement has been duly authorized by resolution of its Board of Trustees and constitutes the valid and binding obligation of Owner, enforceable in accordance with its terms.

**SUCCESSORS; CONTINUITY OF OBLIGATIONS:** This Agreement is binding upon Owner and its successors and assigns, including without limitation any successor entity, surviving entity, reorganized entity, or transferee of all or substantially all of Owner's assets, whether by merger, consolidation, affiliation, reorganization, conversion, transfer, or operation of law, and including any trustee, receiver, or fiduciary appointed with respect to Owner or its assets. No change in the membership or composition of Owner's Board of Trustees or Directors, and no change in Owner's officers, management, leadership, name, accreditation status, or corporate structure, shall affect the validity or enforceability of this Agreement or Owner's obligations hereunder, which shall continue in full force notwithstanding any such change.

1. **PROPERTY:** Located at **1315 Oakwood Avenue, Raleigh, NC (the "Main Campus") plus additional addresses and properties indicated on Exhibit A** including any and all buildings, improvements, fixtures and appurtenances thereto (collectively, the **"Property").**

2. **TERM:** This Agreement begins upon entry of an Order Authorizing the Owner to Employ Avison Young (as defined in Section 18 below) and shall remain in force for a period of 12 calendar months from such date (the "Term"). Owner or Avison Young may terminate this Agreement at any time for any reason upon thirty (30) days' prior written notice to the other party, without payment of any termination fee, breakup fee, or penalty. Any extension of the Term beyond the initial 12-month period shall require Owner's prior written consent; and, if the Owner's bankruptcy is still pending, further approval of the Bankruptcy Court.

3. **SERVICES:** Avison Young will coordinate with the third party appraiser of record on its update to the appraisal, create a plan to redevelop the Main Campus focused on the Owner retaining that asset and use the Main Campus for educational, healthcare, or technology focused activities through the sale of property or Alternative Transactions as defined in Section 8. Further, Avison Young may enlist the efforts of its firm to secure a satisfactory purchaser for portions of the Property not necessary for the redevelopment of Main Campus on such terms as may be acceptable to Owner. Avison Young will assist Owner in its negotiation of an agreement procured hereunder. For purposes of this Agreement the terms "**sale**," "**sell**," or "**sold**" refer to and include any sale, transfer, or other disposition of the Property or any interest therein from Owner to a third-party, as well as any commitment of the Property or any interest therein to a joint venture, partnership, trust, development, corporation, or other entity holding title to or controlling the Property.

4. **AGENCY RELATIONSHIP DISCLOSURE:** By entering into this Agreement, an exclusive agency relationship exists between Owner as principal and Avison Young as agent. Avison Young designates Michael B. Kennedy, Sullivan Johnston and Baxter M Walker III, SIOR CCIM as Owner's designated agent(s) ("**Designated Agents**"). Avison

Young may substitute other representatives as the Designated Agent(s) upon written notice. Owner acknowledges and agrees that Avison Young is acting solely as Owner's agent in connection with the services described herein. Avison Young's agency relationship extends to all services provided under this Agreement, including brokerage, consulting, and the coordination of financing services described in Sections I, II, and III hereof. Owner acknowledges that Avison Young's role as agent does not extend to the provision of legal, tax, accounting, or securities advice, and that Owner should engage its own qualified professionals for such matters.

5. **OUTSIDE BROKERS:** "**Outside Broker**" means any broker other than the Designated Agent(s). Avison Young may solicit the cooperation of Outside Brokers in its performance of its services hereunder.

6. **ADVERTISING:** If authorized by Owner during the Term of this Agreement, Avison Young may advertise and place signage on the Property. All advertising and promotion will be done pursuant to a program and budget agreed upon by the parties. Owner consents to the collection, use, and disclosure of information and photographs of the Property by Avison Young for the purpose of listing and marketing the Property. Owner represents that it has all rights and authorizations necessary with respect to all advertising materials supplied to Avison Young. Owner grants to Avison Young a nonexclusive, royalty-free license to use such material for marketing purposes. Upon 15 calendar days after termination or expiration of this Agreement, the license granted herein shall terminate and Avison Young shall promptly remove all signage and cease use of Owner's materials.

7. **COMMISSION:** If, during the Term or any extension thereof, Owner sells all or any portion of the Property, or any of Owner's interest therein, Owner will owe and pay to Avison Young a sale commission, computed in accordance with the attached Commissions Schedule.

In the event of termination of this agreement, Avison Young will provide to Owner a list of Prospects, as defined below ("**List**") within seven (7) calendar days of Termination. The List shall be limited to Prospects, herein after defined, who during the Term have (i) been engaged in meaningful discussion with Avison Young regarding the Property, (ii) submitted a bonafide offer of interest for sale or lease of the Property, or (iii) been presented to the Owner by Avison Young. If during the Term, or within 180 days of expiration or termination thereof, a prospective purchaser, tenant, or other partner (or any subsidiary, parent, affiliate or other related party) (each a "**Prospect**") appearing on the List, either: (i) enters into a sale or other transaction document, or (ii) within that period negotiations either continue, commence, or resume, and thereafter a sale or other transaction document concerning the Property is executed between the Owner and such Prospect, Owner will pay a commission to Avison Young as provided above as if sale or other transaction document had been executed during the Term. Except for commission already deemed earned and approved by the court, no tail commission shall be payable if this Agreement is terminated by Owner for cause or if Owner terminates due to a dual-agency violation under Section 9.

8. **ALTERNATIVE TRANSACTION:** If a proposed sale evolves into any other Property transaction where Owner conveys the Property or its interest therein to a third party (excluding any commitment of the Property as security in a loan agreement), including but not limited to a joint venture, 501(c)(3) nonprofit partnership or participation, development, space lease, ground lease, equity commitment, or other fee simple conveyance thereof, then Avison Young will be deemed, without an amendment hereto, as Owner's agent for such transaction and will be entitled to a commission thereunder pursuant to the terms of this Agreement.

9. **EXCLUSIVE REPRESENTATION OF OWNER:** Designated Agents shall represent only Owner in all transactions under this Agreement. Designated Agents shall not act as agent, broker, or representative for any purchaser, tenant, investor, lender, or other counterparty in any transaction involving the Property or Owner without: (a) full written disclosure to Owner of all material facts regarding such representation and (b) Owner's prior written consent, which consent may not be unreasonably withheld.

10. **ATTORNEYS' FEES:** In the event either party institutes legal action to enforce its rights under this Agreement, the prevailing party will be entitled to recover its reasonable attorneys' fees and other costs so incurred from the

non-prevailing party. For purposes of this Agreement, the parties understand and agree that, to the extent permitted by applicable law, Broker may have a lien upon the Property or funds from the disposition thereof until the commission is paid Any portion of a commission not paid will bear interest at a rate of eight percent (8%) per annum pursuant to N.C. Gen. Stat. § 24-1.

11. **AUTHORITY:** Owner will refer to Avison Young all inquiries and offers received by Owner regarding the Property, and Avison Young shall assist Owner with commercial negotiations in relation thereto. Owner shall provide Avison Young with material information concerning the Property and such other information and documentation reasonably requested by Avison Young. Owner shall be responsible for approving or rejecting any offers regarding the Property, and for determining the content and legal sufficiency of sale documents regarding the Property. No offer or contract to sell the Property shall be binding upon Owner unless duly executed by Owner. Owner represents and warrants to Avison Young that: (i) Owner is authorized to execute this Agreement and perform its obligations herein; and (ii) Owner shall provide such information as reasonably necessary for Avison Young to perform its services hereunder. Owner shall defend, indemnify, and hold Avison Young and its affiliates harmless from and against any claim, demand, action, loss, damage, cost, or fee (including reasonable attorneys' fees) arising from or related to any allegation that Owner's (a) gross negligence or willful misconduct in connection with the sale of the Property, or (b) Owner's breach of any representation, warranty, or obligation under this agreement Owner's aggregate liability under this Section shall not exceed the greater of (x) the aggregate commissions paid or payable to Avison Young under this Agreement and (y) $75,000, except in cases of gross negligence, willful misconduct, or fraud.

    Avison Young shall defend, indemnify, and hold Owner harmless from and against any claim, demand, action, loss, damage, cost, or fee (including reasonable attorneys' fees) arising from or related to (a) Avison Young's gross negligence or willful misconduct in the performance of services under this Agreement, or (b) Avison Young's breach of any representation, warranty, or obligation under this Agreement. Notwithstanding the foregoing, Avison Young's total indemnity obligations under this Agreement shall not exceed the amount of the greater of (x) fees or commissions actually paid to Avison Young under this Agreement, and (y) $75,000, except in cases of gross negligence, willful misconduct, or fraud.

12. **PROFESSIONAL ADVICE:** Owner represents and warrants that in determining the financial soundness and suitability of any sale Prospect, Owner shall rely solely upon Owner's own investigation and evaluation, and that any decision by Owner to enter into and close any sale or other transaction shall be a product of Owner's own investigation and evaluation and not upon any representation by or opinion of Avison Young. Owner represents and warrants that it is not relying and will not rely on Avison Young in the Owner's discharge of its investigation and evaluation of any Prospect. Owner acknowledges that it has independently reviewed this Agreement and the transactions contemplated herein with its own legal counsel, financial advisors, and other professionals of its choosing. Owner is not relying on Avison Young for any legal, tax, financial, or investment advice. All decisions made by Owner regarding the Property, any transaction, financing, or other matter shall be the sole responsibility of Owner. Avison Young shall not be liable for any loss, damage, or claim arising from Owner's decisions or actions taken based on Owner's own independent judgment.

13. **LIMITATION ON LIABILITY:** Except with respect to gross negligence, willful misconduct, or fraud, at no time will the total liability of either party for any breach or any violation of this Agreement, or for any error or omission in the performance provided for herein, exceed the amount of the commission or fees paid or payable under this Agreement, or for any error or omission in the performance provided for herein, exceed the amount of the commissions or fees paid or payable under this Agreement. In no event shall either party be liable to the other party for any punitive, exemplary, special, indirect, incidental or consequential damages (including but not limited to lost profits or lost business opportunities) arising out of or relating to this Agreement, regardless of the legal theory under which such damages are sought, and even if the party has been advised of the possibility of such damages or loss.

14. **COMPLIANCE:** Each party warrants and represents to the other party, that each party, and all persons and entities owning (directly or indirectly) an ownership interest in each party: (a) is not, and shall not become, a person or entity with whom Avison Young is restricted from doing business with under regulations of the Office of Foreign Asset Control ("**OFAC**") of the Department of the Treasury or under any statute, executive order, or other governmental action; and (b) is not knowingly engaged in, and shall not knowingly engage in, any dealings or transactions or be otherwise associated with such persons or entities described in provision (a) above. Each party represents and warrants to the other that it (and any party acting on its behalf) has not, in order to enter into this agreement, offered, promised, authorized or made any payments or transfers of anything of value which have the purpose or effect of public or commercial bribery, kickbacks or other unlawful or improper means of doing business ("**Prohibited Activity**") and will not engage in Prohibited Activity during the term of this agreement. In the event of any violation of this section, the non-offending party shall be entitled to immediately terminate this agreement and take such other actions as are permitted or required to be taken under law or in equity.

15. **GOVERNING LAW AND DISPUTE RESOLUTION:** This Agreement shall be governed by the laws of the State of North Carolina, without regard to its conflict of laws principles. Any dispute arising out or relating to this Agreement shall be subject to the exclusive jurisdiction of the United States Bankruptcy Court for the Eastern District of North Carolina. If the Bankruptcy Court declines jurisdiction, the parties' consent to the exclusive jurisdiction of the United States District Court for the Eastern District of North Carolina in Raleigh, North Carolina.

16. **MISCELLANEOUS:** The failure by a party to exercise any right hereunder shall not operate as a waiver of such party's right to exercise such right or any other right in the future. This Agreement is binding upon the parties and their respective successors and assigns. It is illegal for either Owner or Avison Young to refuse to present real property to any person because of any class protected by applicable law. In the event that any provision of this Agreement shall be held to be invalid or unenforceable, such ruling shall not affect the validity or enforceability of the remainder of the Agreement in any respect whatsoever. Owner consents to Avison Young's describing and publishing its role in any transaction executed pursuant to this Agreement, subject to Owner's reasonable editorial approval of such publicity. The terms "Owner" and "Prospect" include such parties' respective parent entities, affiliates, subsidiaries, successors, assigns, and any sale designees for the purposes of executing such sale agreements. Any authorization or approval of either party as required by the terms of this Agreement may be effectuated by an email from such party or its authorized designee, and such email approval shall be deemed written approval for the purposes of this Agreement. This Agreement may be executed in counterparts, each of which constitutes an original instrument and all of which constitute one and the same instrument. The provisions of this Agreement that, by their nature, are intended to survive the expiration or termination of this Agreement shall survive any such expiration or termination.

17. **PROSPECTIVE PURCHASERS AND PARTNERS:** In performing its services hereunder, Avison Young will conduct broad, structured outreach to qualified purchasers, investors, and partners capable of retiring Owner's outstanding obligations and delivering long-term value to Owner while preserving its educational mission. Prospective purchasers and partners may include, without limitation:

    (a) National and regional master developers with experience in campus-scale, mixed-use, and institutional redevelopment;

    (b) Institutional real estate investors and funds active in multifamily, senior living, medical office, retail, and mixed-use product types;

    (c) Regional health systems and medical education partners for clinical, training, and allied health facilities on or adjacent to the campus;

    (d) Philanthropic organizations, foundations, and mission-aligned 501(c)(3) nonprofit partners, including those supporting historically black colleges and universities and higher education;

    (e) Philanthropic-oriented investment groups, family offices, and high-net-worth investors with legacy

preservation and community impact objectives;

(f) Venture capital and private equity partners focused on education, healthcare, and innovation district development;

(g) Ground lease and leaseback capital providers whose structures allow Owner to monetize land value while retaining ownership or long-term control of core assets;

(h) Universities, academic institutions, and educational operators for co-location, joint programming, or space utilization partnerships;

(i) International capital sources, including foreign direct investment programs; and

(j) Community-based organizations and other purchasers or partners identified through the marketing process and approved by Owner.

18. **BANKRUPTCY COURT APPROVAL**: This Agreement shall not become effective until entry of an order by the United States Bankruptcy Court for the Eastern District of North Carolina (the "Bankruptcy Court") approving Owner's retention of Avison Young pursuant to 11 U.S.C. §§ 327 or 328, as applicable (the "Approval Order"). No compensation payable per the terms of this Agreement shall be paid until authorized by the Approval Order and any subsequent order of the Bankruptcy Court. Avison Young acknowledges that it is subject to the disclosure requirements of Federal Rule of Bankruptcy Procedure 2014 and § 327(a) of the Bankruptcy Code, including disinterestedness. Avison Young acknowledges that all compensation under this Agreement is subject to review and approval of the Bankruptcy Court and that the Bankruptcy Court retains jurisdiction to modify, reduce, or disallow any fees or commissions if required by applicable law. In the event of any conflict between the terms of this Agreement and any order of the Bankruptcy Court (including the Approval Order or any order related to the debtor-in-possession financing facility), the Bankruptcy Court order shall control.

## II. AVISON YOUNG CONSULTING SERVICES AGREEMENT

1. **SCOPE:** Avison Young Consulting Services will include the following:

(a) **Current State Assessment:** Review and document SAU's current financial commitments, obligations, restrictive covenants, timelines, and related materials, and prepare a consolidated current state report for SAU leadership.

(b) **Campus and Property Due Diligence:** Study all SAU properties, including the building inventory, title, surveys, environmental reports, restrictions, and site conditions, and prepare an overall map and assessment of existing campus assets.

(c) **Valuation Baseline:** Coordinate the update of the existing appraisal and related market analytics to establish a current, defensible asset value baseline for Board decision making.

(d) **Stakeholder and Governance Engagement:** Establish a single point of contact protocol, engage the Board, University leadership, counsel, and advisors, and facilitate structured working sessions throughout the engagement.

(e) **University Vision, Program and Space Needs:** Work with SAU leadership to document current and future academic programs, potential real estate and space requirements (square footage estimate), and heritage considerations, forming the basis of the future campus plan.

(f) **Options Analysis:** Identify and evaluate the full range of strategic options for the campus and operations, including consolidation, partnership, development, ground lease, and alternative structures, with market potential and investor appetite assessments.

(g) **Land Value Capture Strategy:** Develop a land value capture strategy aligned with SAU's mission and

objectives to convert land value into long-term financial sustainability.

(h) **Decision-Making Framework and Board Workshop:** Deliver a rigorous decision-making framework, comparative and cost-benefit analysis of options, and facilitate a Board and leadership workshop to select the preferred path.

(i) **Partnership Framework:** Prepare initial planning and phasing concepts, protective structuring for the core historic campus, and the request for proposal framework, target partners or purchasers, evaluation criteria, and data room organization for the partner procurement process.

(j) **Project Management and Reporting:** Provide overall project governance, critical path scheduling, key performance indicators, and a centralized dashboard with regular reporting to SAU leadership through implementation.

2. **RETAINER:** A Retainer amount of $50,000.00 (the "Retainer") shall be paid within 30 days following entry of the Approval Order. The Retainer shall be fully creditable against future commissions earned under this Agreement.

3. **FEES:** All additional fees for Avison Young Consulting Services beyond the Retainer shall be paid from proceeds from Commissions (see Commission Schedule, infra).

4. **OUTSIDE CONSULTANTS:** Outside Consultant fees, including but not limited to engineers, architects, land use planners, heritage, historic preservation, building and environmental consultants, shall be contracted directly by the Client and are outside of the scope of this agreement.

## III. AVISON YOUNG FINANCING SERVICES AGREEMENT

This FINANCING SERVICES AGREEMENT ("Agreement") is made as of the date of the last of Party's signature hereto ("Effective Date"), by and between **Saint Augustine's University** ("**Owner**") including its affiliates, successors and/or assigns (collectively, "Client") and Avison Young – North Carolina, LLC ("**Avison Young**"). Avison Young and Client shall each individually be referred to as a "Party" and jointly referred to as the "Parties."

1. **<u>Services</u>**. Client hereby grants Avison Young the exclusiveright, excluding Self-Help Ventures Fund (See Section 4 Commission for Financing) to arrange financing for Client or, as applicable, its designee, of the Property (the "Collateral"). Theforegoing authorization includes a granting of authority by Client to Avison Young to contact and send investment information regarding the Collateral to Lenders. For the purposes of this Agreement, "Lender" shall include financing lenders, investors, and capital sources regardless of the source or type of the capital, including, but not limited to limited partner equity, co-general partner equity, preferred equity, mezzanine debt and senior debt.

2. **<u>Securities Transactions:</u>** For any financing constituting the offer or sale of securities, including but not limited to taxable or tax-exempt bond financings, common equity, preferred equity, convertible preferred equity, convertible debt, private placements, institutional equity investments, strategic equity investments, passive joint venture equity interests, and any other equity or equity-linked financing, Avison Young shall coordinate with a licensed broker-dealer (and, with respect to tax-exempt bond financings, a registered municipal advisor, as applicable) engaged under a separate agreement. The licensed broker-dealer engaged under a separate agreement shall be directly responsible and liable to Owner/Client for the broker-dealer's services. Avison Young shall have no liability to Owner/Client for the acts, omissions, advice, or services of

the licensed broker-dealer or any registered municipal advisor. Owner/Client acknowledges that Avison Young is not a registered broker-dealer or municipal advisor and will not provide services requiring such registration. Nothing in this Agreement shall be construed to require Avison Young to perform services requiring broker-dealer or municipal advisor registration.

3. **Term and Termination**. Term shall be as defined in Section I (2). Within seven (7) days from the termination or expiry of this Agreement, Avison Young will provide to Client a written list of prospective Lenders (the "List") to whom Avison Young had engaged in meaningful discussion regarding the Property and/or Collateral, (ii) received a term sheet for the Property/Collateral, or (iii) Avison Young has introduced Lender to Owner for financing the Collateral. If, during the Term or within 180 days of expiration or termination of the Term, Client secures financing from an entity appearing on the List (each, a "Prospect") and either: (i) secures financing from such Prospect, as evidenced by executed financing commitments, or (ii) negotiations to secure financing from a Prospect either continue, commence, or resume within 180 days after the end of the Term, and thereafter the transaction closes, Avison Young shall be deemed to have conclusively earned, and Owner will pay to Avison Young, the Commission (hereinafter defined) as if such transaction had closed during the Term.

4. **Commission for Financing**. If during the Term Client secures financing for any portion of the Collateral with either an Avison Young-procured Lender or any other Lender, regardless of whether such Lender was procured by Avison Young, then Client shall pay Avison Young a commission equal to 1.5 % of the gross dollar amount of the loan (the "Commission"). In the event that Self-Help Ventures Fund provides any additional lending or financing during the term of this agreement, the commission shall be 0.0% of the gross dollar amount of the Self-Help Ventures Fund loan amount. For purposes of calculating the Commission payable to Avison Young under this Agreement, the term "gross dollar amount" shall mean the respective total face amount of all forms of financing committed by the Lender. The foregoing notwithstanding, the term "gross dollar amount" does not include equity invested by Client. The Commission shall not be reduced by any amounts placed in escrow in connection with the Collateral, or any deferred consideration, fees, pro-rations, closing expenses, or unfunded proceeds.

5. **Payment**. The Commission shall be deemed to have been fully earned upon (i) execution of a commitment acceptable to Client in its sole discretion, and (ii) approval of the Bankruptcy Court, if necessary. The Commission shall be payable in full at the earlier of: (i) the Closing for the subject Collateral, or (ii) within thirty (30) days from issuance of an invoice by Avison Young, should the loan fail to close due solely to the intentional default by Client. This Agreement shall serve as Client's explicit authorization to the closing agent to disburse the Commission to Avison Young from Client's funds at the Closing of such transaction. For the purposes hereof, the term "Closing" shall mean the signing of definitive documentation by and between Client and the applicable Lender providing financing to Client. In the event that the Commission is not paid pursuant to the terms of this Agreement, any outstanding balance of the Commission that is due and payable beyond its due date and payable beyond its due date shall earn interest at a rate of eight percent (8%) per annum pursuant to N.C. Gen. Stat. § 24-1.

6. **Expense Reimbursement**. Client shall reimburse Avison Young for all preapproved costs and expenses incurred by Avison Young for the provision of the services set forth above. Client shall reimburse Avison Young for any payments made by Avison Young to third-party consultants or professionals, provided

such third-party consultants and professionals have been approved by Client in advance of their engagement.

7. **Liability**. In no event shall any partner, shareholder, director, officer, agent, servant, employee, representative or affiliate of either Party have any personal liability in connection with this Agreement. Neither Party shall be liable to the other for, and each Party hereby waives any and all rights to claim against the other, any special, indirect, incidental, consequential, punitive or exemplary damages in connection with this Agreement, including, but not limited to, lost profits, even if such Party has knowledge of the possibility of such damages. Except with respect to gross negligence, willful misconduct, or fraud, at no time will the total liability of Avison Young for any breach or any violation of this Agreement, or for any error or omission in the performance of the Services provided for herein, exceed the amount of the Commission paid from Client to Avison Young.

8. **Miscellaneous**. The general provisions set forth in Sections I.10 (Attorneys' Fees), I.14 (Compliance), I.15 (Governing Law), and I.16 (Miscellaneous) of this Agreement shall apply to the Financing Services provided under this Section III with equal force and effect, and are incorporated herein by reference. In no event shall any partner, shareholder, director, officer, agent, servant, employee, representative or affiliate of either Party have any personal liability in connection with this Agreement. Each Party hereby acknowledges that the person signing this Agreement on behalf of such Party has full power and authority to do so and that such execution of this Agreement on behalf of such Party has been duly authorized by all necessary and proper corporate action of such Party. This Agreement, including Sections I, II, and III hereof, constitutes the entire agreement between Owner and Avison Young with respect to the subject matter herein, and supersedes all prior discussions, negotiations, and agreements, whether written or oral. Any amendment or modification to this Agreement must be in writing and executed by authorized representatives of each party.

Each party acknowledges that it has received and understands this Agreement and the attached Commissions Schedule, and the Working With Real Estate Agents Form.

| | |
|---|---|
| **OWNER**: | **AVISON YOUNG**: |
| SAINT AUGUSTINE'S UNIVERSITY | AVISON YOUNG – NORTH CAROLINA, LLC |
| By: ______________________________ | By: ______________________________ |
| Name: ___________________________ | Name: ___________________________ |
| Its: ______________________________ | Its: ______________________________ |
| Date: ____________________________ | Date: ____________________________ |

## COMMISSIONS SCHEDULE

**SALE COMMISSION RATES**:

The total commission due hereunder for each individual sale or alternative transaction shall be calculated on a marginal tiered basis as follows: (a) five percent (5.0%) of the portion of the Gross Sale Price up to and including $5,000,000; plus (b) four percent (4.0%) of the portion of the Gross Sale Price greater than $5,000,000 and up to and including $15,000,000; plus (c) three percent (3.0%) of the portion of the Gross Sale Price exceeding $15,000,000. If an Outside Broker procures the purchaser, the Outside Broker will be compensated by purchaser.

GROSS SALE PRICE: For purposes of calculating the commission, "Gross Sale Price" shall mean the total consideration paid or payable in connection with the transaction, including any mortgages, loans, or other obligations of Owner assumed by Purchaser or taken "subject to," and any purchase money loans or mortgages taken back by Owner. For a ground lease or master lease transaction, Gross Sale Price shall mean the sum of all prepaid or capitalized rent plus the present value of all other rent and additional consideration payable under the lease. For a joint venture, contribution, or other alternative transaction, Gross Sale Price shall mean the gross value of the interest in the Property conveyed, contributed, or encumbered.

AGGREGATE COMMISSION CAP: The aggregate sale commissions payable to Avison Young under Section I of this Agreement (exclusive of any fees payable under Sections II and III) shall not exceed $7,500,000.00 (the "Aggregate Commission Cap"). Upon commissions reaching the Aggregate Commission Cap, Avison Young's exclusive obligations under Section I shall terminate, Owner shall thereafter be free to engage other brokers, and any further services by Avison Young shall be provided only upon terms mutually agreed in writing.

COURT APPROVAL OF TERMS: The parties intend that Avison Young's retention be approved under 11 U.S.C. § 328(a) with the compensation terms set forth in this Schedule constituting the approved terms and conditions of employment, and Owner shall request such treatment in the retention application and proposed Approval Order.

1. **GROSS SALE PRICE**: The commission shall be computed in accordance with the above rates based upon the gross sale price(s), which shall include any mortgages, loans or other obligations of Owner which may be assumed by Purchaser or which Purchaser takes title "subject to," and any purchase money loans or mortgages taken back by Owner.

2. **PURCHASE OPTION**: If Owner grants a purchase option, Avison Young will be paid a commission at the above rate on the option price as and when amounts are payable for the option (and for extensions thereof). Upon closing of the sale of the Property to the optionee, whether pursuant to the terms of said option or otherwise, Avison Young will be paid a commission at the above rate on the total sale price (excluding any option amount paid and applied to the sales price).

3. **TIME OF PAYMENT**: The commission will be paid in full at the time of the closing or transfer of title to the Property. In the event of sale or sales of the Property or an installment purchase contract, the entire sales commission is due Avison Young at the execution of the installment sale contract.

**Exhibit A**

The Property consists of approximately 101 acres (101.41 acres per Wake County records) across 37 tax parcels in Raleigh, North Carolina, in two groups: the University's approximately 95.24-acre main campus (seven tax parcels, including the 80.78-acre primary campus parcel, the 12.19-acre Falkrest/Boyer Hall parcel, three Faculty Apartments parcels, the C.A.P.S. Building parcel, and a non-contiguous 0.51-acre cemetery parcel), and 24 additional University-owned parcels along Oakwood Avenue, Hill Street, East Lane Street, and North Tarboro Street south of the campus. The main campus parcels are identified by Wake County Parcel Identification Number (PIN) and Real Estate ID (REID) as follows:

| Description | Address | PIN | REID | Acres |
|---|---|---|---|---|
| Primary Parcel | 1315 Oakwood Avenue | 1714218947 | 90352 | 80.78 |
| Falkrest/Boyer Hall Parcel | 1901 Milburnie Road | 1714326577 | 478010 | 12.19 |
| Faculty Apartments | 417 Hill Street | 1714303885 | 456655 | 0.40 |
| Faculty Apartments | 405 Hill Street | 1714303773 | 456654 | 0.39 |
| Faculty Apartments | 1513 Oakwood Avenue | 1714303623 | 90351 | 0.63 |
| C.A.P.S. Building Parcel | 0 Oakwood Avenue | 1714301674 | 456656 | 0.34 |
| Cemetery Parcel | 500 N. State Street | 1714117635 | 183464 | 0.51 |
| **Total** | | | | **95.24** |

The additional University-owned parcels, outlined in red on the attached map, are identified by Wake County Real Estate ID (REID) as follows:

| Address | REID | Zoning | Acres |
|---|---|---|---|
| 310 N Tarboro Street | 0090330 | OX-3-CU | 0.50 |
| 308 N Tarboro Street | 0100934 | OX-3-CU | 0.21 |
| 0 N Tarboro Street | 0064245 | OX-3-CU | 0.08 |
| 1312 Oakwood Avenue | 0003213 | RX-3 | 0.23 |
| 1406 Oakwood Avenue | 0005495 | RX-3 | 0.16 |
| 1410 Oakwood Avenue | 0013703 | RX-3 | 0.43 |
| 1414 Oakwood Avenue | 0017726 | RX-3 | 0.17 |
| 1416 Oakwood Avenue | 0017725 | RX-3 | 0.17 |
| 1418 Oakwood Avenue | 0089693 | RX-3 | 0.25 |
| 1420 Oakwood Avenue | 0061861 | RX-3 | 0.13 |
| 1504 Oakwood Avenue | 0007404 | RX-3 | 0.38 |
| 1508 Oakwood Avenue | 0011287 | RX-3 | 0.12 |
| 1512 Oakwood Avenue | 0029276 | RX-3 | 0.13 |
| 1514 Oakwood Avenue | 0046569 | RX-3 | 0.27 |
| 1518 Oakwood Avenue | 0013699 | RX-3 | 0.06 |
| | | | |
| 321 Hill Street | 0060230 | RX-3 | 0.06 |
| 402 Hill Street | 0013696 | NX-3 | 0.11 |

| | | | |
|---|---|---|---|
| 404 Hill Street | 0013697 | NX-3 | 0.10 |
| 406 Hill Street | 0013704 | NX-3 | 0.11 |
| 1311 E Lane Street | 0062896 | R-10 | 0.17 |
| 1431 E Lane Street | 0007403 | R-10 | 0.14 |
| 1435 E Lane Street | 0043170 | R-10 | 0.13 |
| 1501 E Lane Street | 0029679 | R-10 | 0.08 |
| **Total** | | | **4.36** |

The following additional University-owned parcels are identified from Owner's records by Wake County Real Estate ID (REID) and Parcel Identification Number (PIN), with zoning and acreage to be confirmed by title commitment:

| **Address** | **REID** | **PIN** |
|---|---|---|
| 2941 New Bern Avenue | 0094903 | 1724112190 |
| 2885 Creech Road | 0344617 | 1712647357 |
| 307 Heck Street | 0057684 | 1714102447 |
| 113 Lincoln Avenue | 0016204 | 1713283627 |
| 114 Lincoln Avenue | 0059912 | 1713281672 |
| 128 Lincoln Avenue | 0005784 | 1713281268 |
| 1805 Oakwood Avenue | 0013389 | 1714400630 |

The foregoing parcel identifications and acreages are as reported in county records, the September 2024 and March 2025 appraisals of the Property, and Owner's records (main campus acreages reflect the recorded plat; county assessor acreages differ slightly), and are subject to confirmation by survey and title commitment. In the event of




any discrepancy between the attached map and the parcel tables above, the parcel tables control.

# EXHIBIT B

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**RALEIGH DIVISION**

**IN RE:**
**SAINT AUGUSTINE'S UNIVERSITY**
**DEBTOR**

**CHAPTER 11**
**CASE NO.: 26- 01864-5-DMW**

**AFFIDAVIT**

I, Kathy Gigac, do solemnly depose and declare as follows:

1. I am employed as a real estate broker with Avison Young-North Carolina, LLC ("Advisor") and am authorized to execute this affidavit on its behalf.

2. I, along with the other members of Avison Young-North Carolina, LLC, have been asked to serve, in accordance with the terms of the attached Engagement Agreement and subject to the approval of this Court, as the Debtor's real estate advisor.

3. Neither I nor any member of the Advisor (i) is a creditor, an equity security holder, or an insider of the Debtor, (ii) is or was within the preceding two years a director, officer, or employee of the Debtor, or (iii) has an interest materially adverse to the interest of the Debtor's bankruptcy estate, or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor, or for any other reason. Both Avison Young-North Carolina and I are disinterested persons as defined in 11 U.S.C. § 101(14).

4. If employed by the Debtor, the Advisor intends to apply for compensation for professional service rendered in connection with the Debtor's bankruptcy case, plus reimbursement of actual and necessary expenses, upon the terms set forth in the Application and pursuant to §§ 327 and 328 of the Bankruptcy Code. No compensation has been received from the Broker or anyone acting on its behalf in connection with this matter.

5. The Advisor has not been retained by any of the creditors of the Debtor or any other party in interest or their respective attorney or accountants.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Date: August 20, 2026

Kathy Gigac, Managing Director/Principal
Avison Young-North Carolina, LLC

**EXHIBIT C**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**RALEIGH DIVISION**

**IN RE:**
**SAINT AUGUSTINE'S UNIVERSITY**
**DEBTOR**

**CHAPTER 11**
**CASE NO.: 26- 01864-5-DMW**

**ORDER GRANTING APPLICATION TO EMPLOY REAL ESTATE ADVISOR**

**THIS MATTER** coming before the Court upon the application (the "Application") of Saint Augustine's University (the "Debtor"), for authority to employ Avison Young-North Carolina, LLC as real estate advisor. Upon the Application and the affidavit attached thereto, it is hereby:

It is hereby **ORDERED, ADJUDGED, and DECREED** that the Debtor is authorized to employ Avison Young- North Carolina, LLC, for the purposes described in the Application. The compensation shall be set by the Court according to 11 U.S.C. §§ 327, 330, and 507.

**END OF DOCUMENT**